UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PABLO ARPI,

                    Petitioner,

        - against -

MICHAEL CAPRA,

                    Respondent.

18 Civ. 9001 (KMK) (AEK)

**REPORT AND
RECOMMENDATION**

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.[1]**

Currently before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by *pro se* Petitioner Pablo Arpi ("Petitioner"), challenging his judgment of

conviction for the crimes of one count of course of sexual conduct in the first degree and two

counts of endangering the welfare of a child.  ECF No. 1 ("Petition" or "Pet.") ¶ 5; *see* ECF No.

13 (Affidavit in Opposition ("Resp. Aff.")) at 1.  The Petition sets forth three purported grounds

for habeas relief, all based on the allegedly ineffective assistance of counsel: (1) counsel did not

prepare a defense, including failing to consult with or call a medical expert witness; (2) counsel

failed to argue that the recording of a telephone call between Petitioner and the victim's father

was inadmissible because Petitioner did not have an attorney present; and (3) counsel was not in

his right state of mind due to his daughter having cancer and his mother's death, and counsel

therefore should have withdrawn from the representation.  Pet. ¶ 12.  For the reasons that follow,

I respectfully recommend that the Petition be DENIED.

---

[1] This matter was originally filed in the U.S. District Court for the Eastern District of
New York on August 20, 2018.  ECF No. 1.  On September 17, 2018, the Honorable Margo K.
Brodie ordered that the case be transferred to this District.  ECF No. 4.  On November 27, 2018,
Your Honor referred the matter to the Honorable Lisa Margaret Smith.  ECF No. 11.  The
referral was reassigned to the undersigned on October 16, 2020.

**BACKGROUND**

The following is a summary of facts and procedural history relevant to the determination of the claims asserted in this habeas proceeding.

## I.    The Crime and Its Aftermath

Minor victim "J.O." lived with her parents, her two younger brothers, her father's parents, and an aunt in the first-floor apartment of a two-story house in Peekskill, New York. Resp. Aff. at 2.[2]  Petitioner, who J.O. considered to be her "uncle," lived in the second-floor apartment with his "wife"[3] (who was another of J.O.'s aunts) and their son.  *Id.*  J.O.'s father was a landscaper, and he and Petitioner were business partners.  *Id.*  The families were very close, and when J.O. was not in school, she would accompany her younger brother to Petitioner's apartment to watch him while he played with Petitioner's son.  *Id.*  J.O. and her brother would join Petitioner's son in Petitioner's bedroom, and J.O.'s brother and Petitioner's son would play on the floor while J.O. sat on the bed that Petitioner shared with his "wife" and watched them play.  *Id.*  On these occasions, Petitioner was always the only adult in the apartment.  *Id.*

From approximately September 2007 to January 23, 2009, from when J.O. was in second grade until she was in the middle of third grade, Petitioner sexually abused her.  *Id.* at 3.  The sexual abuse occurred in Petitioner's bedroom on his bed and progressed over time from

---

[2] Because Petitioner's prosecution involved charges of sex crimes against a child victim, the Court granted Respondent's motion to file the state court transcripts, including the pretrial hearing and trial transcripts, under seal.  *See* ECF No. 15; Docket Sheet, Order dated 1/25/2019. In an effort to limit the number of citations to the sealed materials, the Court, to the greatest extent possible, cites to the Affidavit in Opposition filed by Respondent.  The Court has conducted a thorough and careful review of the transcripts of the state court proceedings and finds that the Affidavit in Opposition accurately reflects the testimony from those proceedings.

[3] Petitioner referred to his partner as his wife, but they were not legally married.  Resp. Aff. at 2 n.2.

Petitioner touching J.O.'s chest and vagina over her clothes, to him touching J.O.'s chest and vagina under her clothes, to him kissing J.O. on the mouth, to him putting his penis on her vagina, to his putting his penis in her vagina at times. *Id.* J.O. sometimes kicked and screamed, but Petitioner covered her mouth and smothered her cries, and her kicks (except for one occasion) were ineffectual against Petitioner's weight and could not stop the abuse. *Id.* During the abuse, J.O.'s brother and Petitioner's son played on the bedroom floor; one time while Petitioner was on top of J.O. on the bed, her brother threw a water bottle at Petitioner's head, which caused Petitioner to stop. *Id.*

J.O. never told her parents about the sexual abuse because she was too scared. *Id.* at 4. Petitioner threatened that if J.O. ever told anyone, he would kill her aunt, and then once he got out of jail, he would kill her parents. *Id.*

One day shortly before January 23, 2009, J.O. began to cry when her mother asked her to go up to Petitioner's apartment to retrieve her brother. *Id.* at 4. After returning downstairs with her brother, J.O.'s mother asked why she was upset, and J.O. said only that she did not want to go upstairs. *Id.* Then, on January 23, 2009, J.O.'s mother found a drawing by J.O. hinting at an inappropriate relationship between J.O. and Petitioner. *Id.* J.O.'s mother immediately asked J.O. about the drawing, and J.O. began to cry. *Id.* J.O.'s mother showed J.O.'s father the drawing, and J.O.'s father said that if J.O. did not explain the drawing, then he would take her to the hospital where they would hook her up to a lie detector machine to find out the truth. *Id.* at 4-5. J.O. agreed to speak to her mother and told her mother that she had been sexually assaulted by Petitioner. *Id.* at 5. That same day, J.O.'s parents took her to Hudson Valley Hospital in Peekskill for a medical examination. *Id.* at 5. Because of J.O.'s age, a forensic examination was not conducted at Hudson Valley Hospital; instead it was conducted on January 30, 2009 at the

Children's Advocacy Center at the Westchester Institute for Human Development by Nurse Practitioner Margaretann Tagliagambe, who was supervised by Dr. Jennifer Canter. *Id.* at 13; *see* ECF No. 16 (Trial Transcript ("Tr.")) at 598-600.

While J.O. and her parents were at Hudson Valley Hospital on January 23, 2009, someone from the hospital called the Peekskill police, and police officers arrived at the hospital. Tr. at 361. J.O.'s mother told the police about the drawing and what J.O. had told her. *Id.* In their anger upon finding the drawing, before going to the hospital, one of J.O.'s parents tore up the drawing and threw it in the garbage. Resp. Aff. at 4. At the request of the police, J.O.'s parents retrieved the drawing and gave it to them. *Id.*

On January 24, 2009, J.O.'s father went to the Peekskill police station to make a recorded telephone call to Petitioner on his cell phone. Resp. Aff. at 6; *see* ECF No. 16 (*Huntley* Hearing Transcript ("Hearing Tr.")). Prior to making the call, J.O.'s father met with Police Officer Fabian Gonzalez and spoke on the telephone with Detective Marcos Martinez, the officer in charge of the investigation, regarding how the controlled call was going to proceed. Hearing Tr. at 44-45, 86-87. During the call, Officer Gonzalez coached J.O.'s father to ask Petitioner certain questions about what happened between him and J.O. *Id.* at 23, 45-47. Detective Martinez arrived at the police station in the middle of the call and suggested that J.O.'s father tell Petitioner that if Petitioner did not come home to talk about the situation, then J.O.'s father was going to go to the police. *Id.* at 50, 84. At the time of the telephone call, Petitioner was in a car, being driven by his brother from East Hampton, New York (on Long Island) back to Peekskill. *Id.* at 180-82. During the call, Petitioner denied that he had sexual intercourse with J.O., but admitted that he kissed her, pulled her pants down, was on top of her, and that they were trying to have sex. Resp. Aff. at 6-8. Based on Petitioner's statements, the Peekskill Police

4

Department issued a bulletin for police state-wide to be on the lookout for the car, and to detain

Petitioner for the Peekskill police.  *Id.* at 8.  Detective Martinez was notified at around 12:00

a.m. on January 25, 2009, that the New York State Police had stopped the vehicle in Peekskill.

*Id.*  Peekskill police officers were sent to the scene, and around 12:15 a.m., Petitioner was driven

to police headquarters in a marked patrol car.  *Id.*

Upon arrival at police headquarters, Petitioner was placed in an interview room and

interviewed by Detective Martinez, who was fluent in both English and Spanish.  *Id.* at 6, 8.[4]

Detective Martinez administered *Miranda* warnings, in Spanish, from a pre-printed form, which

Petitioner signed to acknowledge that he understood his rights and was willing to talk to

Detective Martinez.  *Id.* at 9.  Detective Martinez then questioned Petitioner.  *Id.*  In a videotaped

interview, Petitioner admitted to Detective Martinez one instance of getting on top of J.O., when

both of them were naked from the waist down, and two instances of sexually penetrating her.  *Id.*

at 9-10.

## II.    Procedural History

### A.    Indictment, Pre-Trial Proceedings, and Trial

On May 12, 2009, Petitioner was indicted on one count of course of sexual conduct in the

first degree in violation of N.Y. Penal Law § 130.75(1)(a), and two counts of endangering the

welfare of a child in violation of N.Y. Penal Law § 260.10(1).  Resp. Ex. 1.[5]  Petitioner

---

[4] The controlled telephone call between J.O.'s father and Petitioner was conducted entirely in Spanish.  Resp. Aff. at 6.

[5] Citations to "Resp. Ex. __" refer to the exhibits submitted to the Court by Respondent that comprise the state court record from Petitioner's criminal case, other than the pretrial hearing and trial transcripts.  These exhibits are filed at ECF Nos. 14-1 through 14-17.  A list of Respondent's exhibits is included as part of Respondent's memorandum of law.  *See* ECF No. 14 at ii.

subsequently filed a motion for omnibus relief seeking, among other things, to suppress his statements.  Resp. Aff. at 11.  The County Court, Westchester County ordered a *Huntley* hearing regarding the motion to suppress Petitioner's recorded telephone conversation with J.O.'s father as well as statements he made to Detective Martinez.[6]  *Id.*  The hearing was conducted on November 12, 13, and 16, 2009; the County Court denied Petitioner's motion to suppress these statements in an oral decision on November 17, 2009.  *Id.*  The court found that Petitioner was a passenger in a car traveling from Long Island to Peekskill when he conversed with J.O.'s father and did not know that J.O.'s father was calling from a police station; thus, the statements Petitioner made were not the product of a custodial interrogation by the police, and it was not necessary for police officers to advise Petitioner of his rights in connection with that call.  *Id.*  The court additionally found that once Petitioner had been transported to police headquarters, before any custodial questioning occurred, Detective Martinez administered *Miranda* warnings to Petitioner, who waived his rights before making any statements.  *Id.* at 11-12.  Therefore, the court determined that Petitioner's statements during the custodial questioning were voluntarily made.  *Id.* at 12.

Petitioner proceeded to trial, at the conclusion of which the jury rendered a guilty verdict on all three counts.  *Id.* at 18.  On March 11, 2010, Petitioner was sentenced to a determinate term of imprisonment of 15 years followed by 10 years of post-release supervision on the one count of course of sexual conduct against a child in the first degree, and two concurrent definite sentences of one year for each count of endangering the welfare of a child.  *Id.*

---

[6] A *Huntley* hearing is held to determine the admissibility of statements a defendant makes to law enforcement, based on an inquiry into the voluntariness of these statements.  *See People v. Huntley,* 15 N.Y.2d 72, 78 (1965).

**B.      Direct Appeal**

On August 9, 2016, Petitioner, proceeding through counsel, filed a direct appeal.  On appeal, Petitioner raised five claims:  (1) he was deprived of the effective assistance of counsel due to critical errors by counsel at trial, including counsel's failure to object to certain leading questioning of witnesses and counsel's eliciting of damaging testimony through his own questioning of witnesses; (2) he was deprived of due process of law and a fair trial because of police conduct relating to his taped telephone conversation and video interview and the County Court's rulings regarding these police procedures; (3) he was deprived of due process of law as his conviction was not supported by legally sufficient evidence and was against the weight of the evidence; (4) his 15-year sentence was excessive; and (5) the combination of these errors rendered the proceeding fundamentally unfair and unconstitutional.  *See* Resp. Ex. 2 ("Resp. App. Brief").

On May 31, 2017, the Appellate Division, Second Department affirmed Petitioner's conviction.  *People v. Arpi*, 150 A.D.3d 1256 (N.Y. App. Div. 2017).  The appellate court found that the trial court properly denied Petitioner's motions to suppress his statements to J.O.'s father and to the police.  *Id.* at 1256-57.  It additionally held that Petitioner's "general motion to dismiss at the close of the People's case was insufficient to preserve his contention that the evidence was legally insufficient," but in any event, the evidence "was legally sufficient to establish [Petitioner's] guilt beyond a reasonable doubt," and "the verdict of guilt was not against the weight of the evidence."  *Id.* at 1257.  The Appellate Division found that Petitioner was not deprived of the effective assistance of counsel under either the New York Constitution or the United States Constitution.  *Id.*  Finally, the appellate court held that Petitioner's sentence was not excessive.  *Id.*

In a letter dated June 16, 2017, Petitioner, proceeding through counsel, sought leave to appeal to the New York Court of Appeals, Resp. Ex. 5, which the prosecution opposed, Resp. Ex. 6.  The Court of Appeals denied the application for leave to appeal on August 15, 2017. *People v. Arpi*, 29 N.Y.3d 1123 (2017).

### C.      Motion to Vacate the Judgment of Conviction

While his direct appeal was pending, Petitioner filed a *pro se* motion, dated December 15, 2016, pursuant to N.Y. Criminal Procedure Law § 440.10 to vacate his judgment of conviction on the ground of ineffective assistance of counsel.  Resp. Ex. 8 ("Petitioner's § 440.10 Motion" or "Pet. § 440.10 Mot.").  Petitioner argued that he was deprived of effective assistance of counsel due to counsel's failure to put on a defense based on the theory that the trial judge would grant a motion to dismiss the charges at the close of the prosecution's case, and several failures related to not consulting with or calling a medical expert.  Pet. § 440.10 Mot. at 2-4.[7]  In Petitioner's § 440.10 Motion, he also contended that trial counsel's ineffectiveness was the result of counsel not being in the right state of mind during the representation.  *See id.* at 48-50.  Petitioner cited trial counsel's application for leave to resign from the practice of law in response to allegations that he misappropriated client funds—filed three years after Petitioner's sentencing—in which counsel noted the "extreme emotional distress" caused by his daughter's cancer diagnosis and the death of his mother.  *Id.* at 48; *see also* Resp. Ex. 10 at Ex. C ¶ 9 ("While my daughter was recovering from cancer, my mother became seriously ill and passed away.  During this time and after the passing of my mother, I was under tremendous emotional

---

[7] All citations to "Pet. § 440.10 Mot." are to the page numbers generated by the Court's Electronic Case Filing system.

stress and pressure.").[8]  Respondent filed an affirmation in opposition to the motion.  Resp. Ex.

9.  Petitioner filed an affirmation in reply.  Resp. Ex. 10.

The Supreme Court, Westchester County denied Petitioner's § 440.10 Motion in a

decision and order dated June 6, 2017.  Resp Ex. 11 ("§ 440.10 Decision").  In the § 440.10

Decision, the court noted at the outset that "[a]t trial, the defense pursued a strategy which

emphasized a lack of physical and psychological evidence of sexual abuse and implied that the

victim's allegations were the product of parental coaching."  § 440.10 Decision at 4-5.  The court

explained that Petitioner's attorney "cross-examined the victim with regards to various

connected issues" and also called several witnesses, including "a forensic psychologist

specializing in Article 10 Mental Hygiene proceedings, the validation of child sex abuse in

family court, and familiar with current literature on sex abuse."  *Id.* at 5.  In addition, the court

added that Petitioner testified, and that Petitioner's wife and another person also testified on his

behalf.  *Id.*

The court began its legal analysis by noting that "[i]neffective assistance of counsel

claims are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668

(1994)."  *Id.* at 9.  The court then proceeded to summarize Petitioner's medical expert claim as

follows:

> [Petitioner] initially claims that trial counsel was ineffective because he
> allegedly did not consult with or contact a medical expert to refute the
> prosecution's medical evidence and, in fact, "decided not to prepare a
> defense because he was confident" that given the absence of physical
> evidence, the court would grant the motion for a trial order of dismissal.
> [Petitioner] goes as far as to allege[] that the lawyer flatly refused to

---

[8] The affidavit in support of the application to resign filed by Petitioner's trial counsel, which was sworn to on March 21, 2013, notes that the misconduct was alleged to have occurred during the period from October 14, 2011 through February 29, 2012, *i.e.*, a period that started more than 18 months after Petitioner's sentencing on the charges at issue here.  *See* Resp. Ex. 10 at Ex. C ¶ 5.

> proceed as [Petitioner] had urged (and offered money) to consult a
> medical expert in the field of child abuse[.]

*Id.* at 10-11.  The judge rejected the claim, finding, among other things, that "[t]hese unsupported allegations are simply insufficient to overcome the presumption that the conviction is valid"; that Petitioner did not submit an affidavit from his trial counsel; and that Petitioner "does not offer affidavits from any other participants in the proceedings, such as family members and others that testified at or attended the trial, or any expert." *Id.* at 11.[9]  In addition, Petitioner did not "submit documents proving that he had access to and offered the attorney funds to retain additional medical experts for trial." *Id.*  The court denied the claim "in the absence of any evidence, other than [Petitioner's] self-serving conclusory allegations," in support of the claim. *Id.*

The judge further found that this claim was "built upon unsubstantiated and conclusory allegations, contradicted by the record and comport[ed] no reasonable possibility of truth under all the circumstances." *Id.*  Rather,

> [i]t is undisputed that the defense counsel moved for omnibus relief, fought for the suppression of [Petitioner's] statements and other hearings and presented an organized defense.  In addition, [Petitioner's] attorney argued that [Petitioner's] very damaging statements were the result of an inadequate *Miranda* waiver at trial.  In addition, the lawyer cross-examined witnesses and called the forensic psychologist and other witnesses to testify on [Petitioner's] behalf.  In addition, the defense attorney argued for and won the exclusion of certain medical testimony.

*Id.* at 12.

Specifically addressing Petitioner's claim of ineffective assistance based on his counsel's failure to call a medical expert, the court found that Petitioner's "broad contentions concerning

---

[9] At pages 36-40 of the § 440.10 Motion, Petitioner cites extensively from an affidavit submitted by Dr. Ronald Paynter in a different case, *People v. Nelson Rodriguez*.  To be clear, Dr. Paynter was *not* retained by Petitioner to provide expert evidence in support of the § 440.10 Motion, and Dr. Paynter did not offer any opinions whatsoever about the facts and circumstances of Petitioner's case.  *See* ECF No. 18 at ECF pp. 8-11.

medical testimony fall far short of making the required prima facie showing that competent and admissible expert testimony was available and [Petitioner] was prejudiced by its absence." *Id.* at 14. Rather, "inasmuch as the People's medical expert testified that there were no physical signs of sexual abuse, which [Petitioner's] counsel highlighted a trial, the failure to call a medical expert did not constitute ineffective assistance and the mere absence of expert testimony, without more, is insufficient to state an ineffective assistance of counsel claim." *Id.* at 14-15. Petitioner failed to "prove that any such expert exists and that calling another expert would outweigh the dangers inherent in calling any expert witness." *Id.* at 15. Moreover, the court found that "challenging evidence through cross-examination rather than presenting expert testimony, as happened in this case, is a reasonable trial strategy," and there was "simply no showing that [Petitioner] was prejudiced by the trial lawyer's strategic decision." *Id.*

As to Petitioner's claim that trial counsel's ineffectiveness was due to counsel not being in the right state of mind during the representation, the court found that "the fact that, years after the trial, the defense attorney was subjected to disciplinary proceedings does not show ineffective representation, particularly as the disciplinary action took place years after [Petitioner's] conviction and involved an unrelated matter." *Id.* at 17. The court added that "[a]s for the claim that the defense attorney was under stress due to his child's illness at the time of trial, this allegation is speculative and without evidentiary basis. Moreover, . . . there is no proof, regardless of any stress on the lawyer, that [Petitioner] received inadequate representation and [Petitioner's] unsubstantiated and conclusory allegations to the contrary are inadequate to support the motion to vacate the conviction based on this ground." *Id.*

Petitioner filed an application for leave to appeal the denial of his § 440.10 Motion, Resp. Ex. 12, which the prosecution opposed, Resp. Ex. 13, and on October 27, 2017, the Appellate

11

Division, Second Department denied Petitioner's leave application, Resp. Ex. 14. Petitioner then filed an application for leave to appeal to the New York Court of Appeals, Resp. Ex. 15, which was denied in an order dated January 31, 2018, Resp. Ex. 16.

\* \* \* \* \* \* \* \* \* \*

Petitioner filed the instant Petition on August 20, 2018. Respondent filed opposition papers on January 14, 2019. ECF Nos. 13-14. Petitioner filed his reply on March 5, 2019.[10] ECF No. 20.

## DISCUSSION

### I.    Standard of Review

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."

---

[10] Under the prison mailbox rule, the Court deems each of Petitioner's submissions filed on the date on which the submission was delivered to prison authorities for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Here, Petitioner's reply is dated March 5, 2019, *see* ECF No. 20 at 1, 5, so the Court assumes that that is the date on which he gave it to prison authorities for mailing.

28 U.S.C. § 2254(a).  The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C § 2254(d).

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C § 2244(d)(1).  This limitation period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Under the AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).  "This requires that the prisoner 'fairly present' his [or her] constitutional claim to the state courts, which he [or she] accomplishes by presenting the essential factual and legal premises of his [or her] federal constitutional claim to the highest state court capable of reviewing it."  *Jackson*, 763 F.3d at 133 (quotation marks omitted).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).

Provided a claim meets all procedural requirements, the federal court must apply the AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003).  Under the AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

13

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While

> it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Id.* at 68-69 (cleaned up).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.     Threshold Determinations

### A.     Timeliness

The applicable date from which to measure the AEDPA one-year limitations period in this matter is the date on which Petitioner's state court conviction became final "by the

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

2244(d)(1)(A).  Here, the New York Court of Appeals denied Petitioner's application for leave to

appeal the denial of his direct appeal on August 15, 2017.  *People v. Arpi*, 29 N.Y.3d 1123

(2017).  Because Petitioner did not file a petition for certiorari seeking review of the New York

State court decisions in the United States Supreme Court, Petitioner's conviction became final on

November 13, 2017, 90 days after the order denying his application for leave to appeal to the

New York Court of Appeals.  *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003).  Petitioner

therefore had until November 13, 2018 to file his habeas petition.  The Petition was timely filed

on August 20, 2018.[11]

### B.      Mootness

Although Petitioner was conditionally released from prison on December 8, 2021, *see*

nysdoccslookup.doccs.ny.gov (Pablo Arpi, DIN 10A1306) (last visited 12/30/2025)

[https://perma.cc/N92P-PHWS], the Petition is not moot.  "In cases where the petitioner

challenges the conviction itself, the Supreme Court has been willing to *presume* the existence of

collateral consequences sufficient to satisfy the case-or-controversy requirement even if those

collateral consequences are remote and unlikely to occur." *Byng v. Annucci*, No. 18-cv-994

(JKS), 2021 WL 1565189, at *3 (N.D.N.Y. Apr. 21, 2021) (quotation marks omitted) (emphasis

---

[11] Although Petitioner filed the § 440.10 Motion while his direct appeal was still pending, and this ordinarily would have served to toll the statute of limitations, *see* 28 U.S.C. § 2244(d)(2), any possible toll was lifted on October 27, 2017, even before the statute of limitations began to run, when the Appellate Division, Second Department denied Petitioner's application for leave to appeal the denial of the § 440.10 Motion, *see* Resp. Ex. 14.  In any event, the Petition was still timely filed.

in original).[12] "This presumption of collateral consequences has been justified on the theory that most criminal convictions do in fact entail adverse collateral legal consequences, including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury." *Id.* (quotation marks omitted); *see also King v. Coveny*, No. 18-cv-2851 (KPF) (OTW), 2022 WL 4952537, at *3 n.1 (S.D.N.Y. Oct. 3, 2022); *Cox v. Brandt*, No. 10-cv-9175, 2012 WL 2282508, at *7 n.7 (S.D.N.Y. June 15, 2012), *adopted by* No. 10-cv-9175, ECF No. 24 (S.D.N.Y. July 17, 2012). Accordingly, because Petitioner remains subject to the collateral consequences of his conviction, the Petition has not been mooted by his conditional release.

### III. Petitioner's Claims for Habeas Relief

The Petition sets forth three purported grounds for habeas relief, all based on the allegedly ineffective assistance of counsel: (1) counsel did not prepare a defense, including failing to consult with or call a medical expert witness (Ground One); (2) counsel failed to argue that the recording of a telephone call between Petitioner and the victim's father was inadmissible because Petitioner did not have an attorney present (Ground Two); and (3) counsel was not in his right state of mind due to his daughter having cancer and his mother's death, and counsel therefore should have withdrawn from the representation (Ground Three). Pet. ¶ 12.

#### A. Legal Standard for Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was "deficient" in that it fell below an

---

[12] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Petitioner along with this Report and Recommendation.

"objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88.  However, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

With respect to the performance component of the inquiry, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  A court must bear in mind both that counsel "has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," and that counsel must have "wide latitude" in making tactical decisions.  *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688-89).  "[C]ourts strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Englert v. Lowerre*, 115 F.4th 69, 81 (2d Cir. 2024) (cleaned up) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).  The petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted).

With respect to the prejudice component, the petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  To satisfy the prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome"—that is, "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 694-95.  This

17

requires "a substantial, not just conceivable, likelihood of a different result." *Cullen*, 563 U.S. at 189 (cleaned up) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

When evaluating an ineffective assistance of counsel claim in a habeas petition, a court's review is "doubly deferential" because the court is charged with taking "a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen*, 563 U.S. at 190 (cleaned up); *see also Jackson*, 763 F.3d at 153. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

"Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.* at 102. Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied" it. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

18

**B.      Application of Legal Standard**

**1.      Counsel's Failure to Prepare a Defense and Consult
With or Call a Medical Expert Witness (Ground One)**

Petitioner's first claim for ineffective assistance of counsel is that counsel failed to prepare a trial defense, including failing to consult with or call a medical expert witness. Petitioner raised this claim in his § 440.10 motion. *See* Pet. § 440.10 Mot. at 5-6, 11. Because the § 440.10 Decision was the last reasoned decision on the merits of this claim, this Court must resolve whether that court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Earl v. Graham*, No. 17-cv-8814 (NSR) (JCM), 2020 WL 8872704, at \*13 (S.D.N.Y. Apr. 22, 2020) ("Because the trial court's decision on [p]etitioner's C.P.L. § 440.10 [motion] provides the last-reasoned decision on the merits, it is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d)(1)–(2)."), *adopted by* 2021 WL 981549 (S.D.N.Y. Mar. 16, 2021); *see also id.* at \*8 ("Courts examine the 'last reasoned decision' by the state courts in determining whether a federal claim was adjudicated on the merits.") (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

"Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'" *Harrington*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *Id.* (cleaned up). Indeed, the Supreme Court has made clear that

19

counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 107 (collecting cases).

Here, Petitioner, just as he did in state court, argues in conclusory fashion that his counsel was ineffective because he did not consult with or call any expert witness. *See* ECF No. 20 (Petitioner's Reply) ¶¶ 11, 15. As an initial matter, Petitioner's assertion is simply incorrect; his counsel did call a forensic psychologist to testify at trial. *See* Resp. Aff. at 16. Counsel only decided not to consult with or call a medical expert to testify. Petitioner does not show, however, that "*every* fairminded jurist would agree that *every* reasonable lawyer would have" consulted with or called a medical expert witness in this particular case. Petitioner fails to demonstrate that his counsel could have retained a medical expert whose testimony would have effectively or meaningfully countered that of the prosecution's medical expert, nor does he demonstrate that his counsel's approach of addressing the prosecution's medical evidence through cross-examination was unreasonable.

In this case, there was no dispute that J.O.'s physical examination was normal, and the prosecution's forensic pediatrics expert, Dr. Canter, opined only that a normal physical examination did not rule out the possibility of sexual abuse. *See* Resp. Aff. at 13. On cross-examination of Dr. Canter, Petitioner's counsel was able to underscore the lack of physical evidence of sexual abuse, eliciting testimony that the physical examination of J.O. found no evidence of vaginal trauma, ecchymosis, hematomas, lesions, fissures, or sexually transmitted diseases, and that this was as consistent with the absence of sexual abuse as it was with the existence of sexual abuse. Tr. at 613-15. Counsel's performance here is therefore analogous to the performance discussed in *Englert*, where the Second Circuit explained that "far from failing to challenge the prosecution expert's medical conclusions or even conducting an ineffective

20

cross-examination, defense counsel neutralized the physical examination evidence, thereby reducing—if not eliminating—any corroborative value the prosecution might try to assign it." *Englert*, 115 F.4th at 84; *see also id.* at 74 ("In the particular circumstances of this case—where defense counsel, among other things, elicited a concession from the prosecution expert that the child's normal physical examination was as consistent with a lack of abuse as with the alleged abuse—the state court did not unreasonably apply *Strickland* in finding that [the petitioner] was not prejudiced by his attorney's failure to consult or call a medical expert and, thus, not denied effective assistance of counsel.").

As to Petitioner's broader claim that his trial counsel did not prepare a defense because he wrongly believed the court would dismiss the case at the close of the prosecution's presentation of evidence, the § 440.10 court laid out all of the steps taken by counsel in mounting a defense in the case, including, among other things, the filing of an omnibus motion, seeking to suppress Petitioner's statements, and calling defense witnesses, including a forensic psychologist. *See* § 440.10 Decision at 12. The judge concluded that "the claim that the defense attorney opted not to prepare a defense is unsupported by the record and does not comport with a reasonable possibility of truth under all of the circumstances." *Id.* Petitioner in no way refutes these findings by the § 440.10 court, and indeed, they are evidenced by the record in Petitioner's criminal case.

In sum, the state court's application of *Strickland* in rejecting Petitioner's ineffective assistance of counsel claim on the ground that trial counsel failed to prepare a trial defense, including failing to consult with or call a medical expert, was neither contrary to, nor an

21

unreasonable application of, clearly established federal law.  For all of these reasons, this ground for habeas relief should be denied.[13]

2.    **Counsel's Failure to Argue Against the Admissibility of the Recording of the Telephone Call between Petitioner and the Victim's Father (Ground Two)**

Petitioner's second asserted ground for habeas relief is that his trial counsel failed to argue that the recording of the telephone call between Petitioner and the victim's father was inadmissible because Petitioner did not have an attorney present.  Though he does not elaborate on this claim in the Petition and does not address it at all in his reply submission, Petitioner appears to be attempting to invoke the protections afforded to individuals by *Miranda v. Arizona*, 384 U.S. 436 (1966), where the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Id.* at 444.  "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way."  *Id.*  Among the procedural safeguards identified by the Supreme Court were advising the defendant, prior to questioning, of his or her "right to the presence of an attorney, either retained or appointed."  *Id.*  Notably, however, in his brief on direct appeal, Petitioner conceded that he was *not* in police custody at time of this telephone call.  *See* Resp. App. Brief at 58.

---

[13] Because the Court finds that Petitioner has not satisfied his burden to establish the first prong of the *Strickland* test, it need not address the second prong.  *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one").

While Petitioner argued on direct appeal that he was deprived of due process and a fair trial by the police conduct related to the recorded telephone call and the trial court's denial of his motion to suppress, *see id.* at 57-59, the ineffective assistance of counsel claim that he raised on direct appeal was not based on his trial counsel's ineffectiveness with respect to the motion to suppress, *see id.* at 53-57. Similarly, in Petitioner's § 440.10 Motion, he did not argue that his trial counsel was ineffective based on counsel's handling of the motion to suppress. *See generally* Pet. § 440.10 Mot. Accordingly, this habeas claim is unexhausted. But regardless of whether the claim is exhausted, it fails on the merits and should be denied,[14] because despite Petitioner's assertion to the contrary, his trial counsel *did* move to suppress the statements made in the recorded telephone call.

Indeed, the trial court held a *Huntley* hearing to determine the admissibility of Petitioner's statements in the recorded telephone call with J.O.'s father. At this hearing, Petitioner's counsel had the opportunity to cross-examine the prosecution's witnesses—the police officers involved in the controlled call and J.O.'s father. He also had the opportunity to call witnesses to testify on Petitioner's behalf, which he did—Petitioner's brother, who was driving the car in which Petitioner was a passenger at the time of the controlled call, Petitioner's wife, and Petitioner himself all testified at the *Huntley* hearing. *See generally* Hearing Tr.; *see also* Resp. App. Brief at 3-12. In an oral decision issued on November 17, 2009, the trial court denied Petitioner's motion to suppress. With respect to Petitioner's statements made during the telephone call, the judge stated that "the [c]ourt need not reach the issue as to whether Officer Fabian Gonzalez'[s] involvement in the recorded call constituted a governmental participation so

---

[14] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

as to invoke the panoply of constitutional protections because it is clear from the testimony at the hearing that no custodial interrogation took place." *Id.* at 16-17.  The trial court's decision on the motion to suppress was upheld on direct appeal.  The Appellate Division, Second Department held that the trial court "properly denied those branches of [Petitioner's] omnibus motion which were to suppress his statements to the child's father . . . ." *People v. Arpi*, 150 A.D.3d at 1257.

In sum, Petitioner's trial counsel *did* seek to have Petitioner's statements made during the recorded telephone call suppressed on the ground that Petitioner was not provided the constitutional protections set forth in *Miranda*, which include the right to have an attorney present.  Counsel "cannot be deemed ineffective for failing to assert a claim that he had in fact raised." *Zayas-Torres v. Martuscello*, No. 18-cv-526 (TJM) (CFH), 2024 WL 4654258, at *18 (N.D.N.Y. May 15, 2024) (quotation marks omitted), *adopted by* 2024 WL 4651817 (N.D.N.Y. Nov. 1, 2024).  Moreover, the fact "[t]hat counsel's suppression motion was ultimately unsuccessful does not amount to ineffective assistance." *Knox v. Rock*, No. 11-cv-882 (MAT), 2013 WL 474754, at *9 (W.D.N.Y. Feb. 6, 2013).

Accordingly, this ground for habeas relief should be denied.

### 3.      Counsel Was Not in His Right State of Mind (Ground Three)

Finally, Petitioner claims that his trial counsel was ineffective because he was "not in his right state of mind" as a result of his daughter's cancer diagnosis and the recent death of his mother.  In the § 440.10 Motion, Petitioner asserted ineffectiveness of trial counsel on a number of different bases and contended that trial counsel's ineffectiveness was the result of counsel not being in the right state of mind during the representation due to his daughter's diagnosis and his mother's passing.  *See* Pet. § 440.10 Mot. at 49-50; *see also* § 440.10 Decision at 7.

24

But in denying Petitioner's § 440.10 Motion, the court found that "[a]s for the claim that the defense attorney was under stress due to his child's illness at the time of trial, this allegation is speculative and without evidentiary basis." § 440.10 Decision at 17.[15] The court added that "there is no proof, regardless of any alleged stress on the lawyer, that [Petitioner] received inadequate representation and [Petitioner's] unsubstantiated and conclusory allegations to the contrary are inadequate to support the motion to vacate the conviction based on this ground." *Id.*

The court assessed Petitioner's claims of ineffective assistance of counsel under the *Strickland* standard, *id.* at 9, and Petitioner makes no argument that the court unreasonably applied *Strickland*. Nor does Petitioner establish any way in which his counsel's performance was deficient as a result of either his daughter's illness or his mother's death. *See Nova v. Artus*, No. 05-cv-8437 (NRB), 2007 WL 1988456, at *9 (S.D.N.Y. July 6, 2007) (rejecting ineffective assistance of counsel claim, noting that the petitioner "argued in his 440.10 motion that his attorney told him she was frustrated and under stress, but this hardly amounts to incompetence," particularly where the record is clear that the attorney "vigorously represented" the petitioner); *see also Totesau v. Lee*, No. 19-cv-6992 (PKC), 2022 WL 1666895, at *20 (E.D.N.Y. May 5, 2022) ("Because Petitioner does not demonstrate how his attorney's prior discipline or any related stress impacted counsel's performance, Petitioner cannot show that these extraneous issues undermine confidence in the outcome of Petitioner's trial or that, absent these extraneous issues, the result of the trial would have been different."), *aff'd*, 2023 WL 8253683 (2d Cir. Nov. 29, 2023) (summary order).

---

[15] The court also rejected any assertion that Petitioner's counsel was ineffective as a result of his subsequent disciplinary proceedings: "the fact that years after the trial, the defense attorney was subjected to disciplinary proceedings does not show ineffective representation, particularly as the disciplinary action took place years after [Petitioner's] conviction and involved an unrelated matter." § 440.10 Decision at 17.

25

The state court's application of *Strickland* in rejecting Petitioner's ineffective assistance of counsel claim on the ground that trial counsel was "not in his right state of mind" was neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, this ground for habeas relief also should be denied.[16]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be DENIED in its entirety.  As the Petition presents no questions of substance for appellate review, I respectfully recommend that a certificate of probable cause should not issue.  *See Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further respectfully recommend that the Court certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have 14 days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail).  A party may respond to another party's objections within 14 days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any responses to such objections, must be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kenneth M. Karas, United District Court, Southern District of New York, 300

---

[16] Because the Court finds that Petitioner has not satisfied his burden to establish the first prong of the *Strickland* test, it need not address the second prong.  *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one").

26

Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable

Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must

be directed to Judge Karas, and not to the undersigned. **Failure to file timely objections to this**

**Report and Recommendation will result in a waiver of objections and will preclude**

**appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 782 F.3d 93,

102 (2d Cir. 2015).

Dated: December 30, 2025
   White Plains, New York

Respectfully submitted<b>,</b>

_____
ANDREW E. KRAUSE
United States Magistrate Judge


A copy of this Report and Recommendation has been mailed by Chambers to the *pro se* Petitioner at his address of record on the docket as of the date of the Report and Recommendation.